# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**BRANNON FARMS, LLC,**

      **Plaintiff,**

         **Case No. 1:24-cv-730**

   **v.**

         **JUDGE DOUGLAS R. COLE**

**CARLETA L. WEYRICH, et al.,**      **Magistrate Judge Bowman**

      **Defendants.**

## OPINION AND ORDER

Plaintiff Brannon Farms, LLC, and Defendants Carleta and Philip Weyrich are neighbors located on opposite sides of Kelly Lane.[1] Their dispute began in 2021 when Brannon Farms started a logging operation, which in turn required improvements to Kelly Lane to support additional truck travel. Then, the following year, Brannon Farms submitted a petition to Jackson Township, the local governing body, seeking to vacate the end of Kelly Lane where Brannon Farms owns the surrounding property. ("Vacating" means that the indicated portion of Kelly Lane would no longer be a public road, and the land would be returned to the landowners of the adjoining lots (i.e., Brannon Farms).) The Weyrichs, meanwhile, filed a lawsuit against Brannon Farms in state court regarding a property line dispute, which

---

[1] Interestingly, while both parties spell it "Kelly Lane," both Google Maps and the Highland County Auditor's website refer to it as "Kelley Lane." As it does not affect the outcome here, the Court declines to further explore the issue of the potentially missing "e," and will rely on the parties' spelling.

included a challenge to the proper location of Kelly Lane and to an alleged easement. After the Weyrichs lost that lawsuit, Brannon Farms responded by suing them here. Specifically, Brannon Farms asserts claims under 42 U.S.C. § 1983 and related state law, alleging that Carleta Weyrich, who is Jackson Township's fiscal officer, violated Brannon Farms' constitutional right to petition the government and otherwise misused her office to interfere with and frustrate Brannon Farms' efforts regarding Kelly Lane. Carleta[2] now moves for judgment on the pleadings, seeking dismissal of Brannon Farms' entire Complaint.

For the reasons stated below, the Court **GRANTS** the Motion (Doc. 14) **IN PART**. Specifically, the Court **DISMISSES WITHOUT PREJUDICE** Count 1, but holds the state-law claims (Counts 2, 3, and 4) in abeyance (pending Brannon Farms' efforts, if any, to replead Count 1 as described below). The Court also **DISMISSES WITH PREJUDICE** Count 5 of the Complaint. But because Brannon Farms may be able to cure deficiencies in Count 1, the Court grants Brannon Farms 30 days to move for leave to amend its Complaint, including attaching the proposed Amended Complaint. Beyond that, because the Court effectively dismisses the Complaint, it **DENIES AS MOOT** Plaintiff's Motion to Transfer Records from Highland County (Doc. 21) and Plaintiff's Motion for Leave to File Plaintiff's Motion for In Camera Review of Documents Under Seal (Doc. 22).

---

[2] Because the Defendants share a last name, the Court will refer to them individually by their first names.

## BACKGROUND[3]

Plaintiff Brannon Farms and Defendants Carleta and Philip Weyrich own neighboring property on Kelly Lane in Jackson Township, Highland County, Ohio. (Compl., Doc. 1, #4). These are not small properties; the Weyrichs own approximately 148 acres, and Brannon Farms owns over 280 acres that are relevant to this dispute. (*Id.*). One stretch of Kelly Lane divides the parties' properties (with Brannon Farms to the East and the Weyrichs to the West). (*Id.*).[4] But that changes at the southern terminus of the road. (*Id.*). There, Brannon Farms owns all of the property surrounding the lane's end. (*Id.*).

In July 2021, Brannon Farms started a logging operation on approximately eighty acres of its property located at the end of the road. (*Id.* at #6). Because Kelly Lane is only a "one lane gravel roadway," Brannon Farms and its contracted logger thought that the road needed improvements in order to handle "the multiple semi-trucks and equipment that would be traversing Kelly Lane for the Brannon timber harvest." (*Id.* at #4, 7). So they worked with Jackson Township to "improve the culverts and gravel roadway." (*Id.* at #7).

---

[3] While the Court "must accept as true all [of Brannon Farms'] well-pleaded factual allegations" at this stage, *Bates v. Green Farm Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020), it reminds the reader that they are just that—allegations.

[4] *See also* Highland County Auditor, https://beacon.schneidercorp.com/Application.aspx?AppID=1116&LayerID=28103&PageTypeID=1&PageID=11526&Q=217983890&KeyValue=21-26-000-057.00 (displaying map of parcels).

Apparently, the Weyrichs did not appreciate these "improvements." Specifically, Brannon Farms alleges Carleta wrongfully told the Jackson Township Trustees and others that:

> the culverts did not need to be replaced and/or were not sized correctly, claiming that culverts were unlawfully being extended beyond the road right of way, claiming that adjacent landowner property (her own property) was being damaged, that the road was illegally widened, that an illegal meeting was held between the Jackson Township trustees and the loggers/Brannon, that the Jackson Township Trustees accepted bribes from the loggers and/or Brannon, that Kelly had been changed and/or that Kelly Lane was turned over to the loggers/Brannon.

(*Id.* at #7). Importantly, Carleta was Jackson Township's fiscal officer at the time the dispute began. (*Id.* at #2–3).[5] Brannon Farms claims that she made these improper statements in her official position, setting up a conflict of interest. (*Id.* at #7).

At the same time that all of this was occurring, Brannon Farms also was negotiating a land purchase with Philip Weyrich's sister, Carol Ann Drummond. (*Id.* at #3). The transaction involved a 360-acre parcel also located along Kelly Lane. (*Id.*). On October 15, 2021, Brannon Farms and Drummond entered into a purchase contract. (*Id.*). And on January 20, 2022, Brannon Farms officially took title to the property. (*Id.* at #5). Over the following months, Brannon Farms built fences and gates around it. (*Id.* at #8).

With the addition of the new property, on September 30, 2022, Brannon Farms submitted a petition to Jackson Township to vacate the southern portion of Kelly

---

[5] Brannon Farms does not make specific allegations regarding Philip Weyrich, other than that he is also a property owner alongside Carleta. (*See, e.g.,* Doc. 1, #4). Moreover, all of the claims surround Carleta's alleged misuse of her office in various ways. (*Id.* at #11–15). Should Brannon Farms take up the Court's offer to amend the Complaint, it either needs to plead specific factual allegations involving Philip or remove him as a defendant.

4

Lane "due to ongoing issues with unlawful activity by third parties." (*Id.* at #8). As they had done with the improvements, the Weyrichs opposed this move. (*Id.*). To start, on December 2, 2022,[6] the Weyrichs sued Brannon Farms in the Highland County Court of Common Pleas regarding a "property line dispute, request for an easement and/or request to relocate Kelly Lane." (*Id.* at #8–9). Brannon Farms, however, claims that this lawsuit was "frivolous" and simply a means to frustrate its efforts to proceed with the petition to vacate it had filed with Jackson Township. (*Id.*). Additionally, Brannon Farms claims that Carleta used her official position to contact the Jackson Township Trustees and the Highland County Prosecutor's office to influence the Trustees' vote on Brannon Farms' petition. (*Id.* at #10, 12).

The Weyrichs did not succeed on either the judicial or the extra-judicial front. First, the state court dismissed some of the Weyrichs' claims for lack of jurisdiction and granted summary judgment to Brannon Farms on all the remaining claims. (*Id.* at #9–10). And in its final judgment, it further quieted title regarding Brannon Farms' property against all of the Weyrich's claims. (*Id.* at #10; Final Judgment Entry, *Philip J. Weyrich v. Brannon Farms, LLC*, No. 22-cv-212 (Highland Cnty. Com. Pl. Apr. 29, 2024)). Second, the Jackson Township Trustees approved Brannon Farms' petition to vacate. (Doc. 1, #10).

---

[6] The Complaint states the lawsuit was filed on December 2, *2023*. (Doc. 1, #8). But public records show that the suit was actually filed in 2022, which matches the petition's timeline. https://eaccess.hccpc.org/eservices/searchresults.page?x=xjwsTQbVistzGqvat2juXGNEFBu DVVyINWKAkhXhLEcuIVotU1Ve9MxcLU-nLuD-eWCl4ez2kG7neA3Qr4ixiQ. The Court is permitted to "take judicial notice of public records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

The Trustees' approval was not the end of the road though; the Highland County Commission also needed to approve the request. (*Id.*). That's where Brannon Farms' winning streak stopped. The Highland County Commission passed Resolution No. 23-22, stating it would "take no action" on the petition. (*Id.* at #11). And Brannon Farms contends that is because Carleta wrongfully interfered to produce this result. (*Id.*).

Upset with its inability to move forward with its plans, Brannon Farms sued the Weyrichs here. The Complaint raises five claims: (1) a claim under 42 U.S.C. § 1983 alleging that Carleta violated the First Amendment by retaliating against Brannon Farms for filing the petition to vacate; (2) a claim that the Weyrichs maliciously interfered with Brannon Farms' right to petition the government; (3) a claim for abuse of process and malicious civil prosecution; (4) a claim that Carleta violated Ohio Revised Code § 2307.60; and (5) a request for punitive damages. (*Id.* at #11–15). In response, Carleta and Philip Weyrich answered separately, (Docs. 5, 9), and Carleta moved for judgment on the pleadings, (Doc. 14). Brannon Farms responded to that motion, (Doc. 15), and Carleta replied, (Doc. 16). So the motion for judgment on the pleadings is now ripe.

## LEGAL STANDARD

When a defendant seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the analysis "generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates*, 958 F.3d at 480. To survive a motion to dismiss under Rule 12(b)(6), in turn, a plaintiff must allege "sufficient factual

6

matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts for the Court "to draw the reasonable inference that the defendant is liable." *Id.* In determining whether the allegations meet that standard, the Court "construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take the allegations as gospel, no matter how unsupported they are. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up).

In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (quotation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (quotation omitted). In short, a court will dismiss an action when "there is no law to support the claims made" or "the facts alleged are insufficient

to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

## LAW AND ANALYSIS

Defendant Carleta Weyrich moves for judgment on the pleadings and to dismiss Plaintiff Brannon Farms' Complaint in its entirety. (Doc. 14, #71). Broadly speaking, Carleta argues that Brannon Farms fails to allege sufficient facts to support its claims. (*Id.* at #72–74). Because the Court agrees that Count 1 contains only "conclusory allegations," *Terry*, 604 F.3d at 276, the Court dismisses that claim without prejudice. And then, because the Court dismisses the sole federal claim in this action, which is also the sole basis for its jurisdiction over the remaining state-law claims, the Court declines to exercise supplemental jurisdiction over those claims, at least for now. The Court also declines to address the qualified immunity argument as to the (now-dismissed) § 1983 claim because the allegations lack the specificity needed to evaluate whether Carleta violated a clearly established right.

## A.    Brannon Farms' First Amendment Retaliation Claim Fails.

Start with Brannon Farms' § 1983 claim alleging retaliation in violation of the First Amendment. (Doc. 1, #12). Section 1983 provides a cause of action for private individuals to sue "[e]very person who, under color of any statute … subjects, or causes to be subjected, any citizen … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In other words, when a plaintiff sues an official in their individual capacity, a plaintiff must allege two elements to support a § 1983 claim: (1) that the defendants deprived the plaintiff

8

of a right secured by federal law, and (2) that the defendant acted under color of state law in doing so. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 149–50 (1970); *Harcz v. Boucher*, 763 F. App'x 536, 540 (6th Cir. 2019). The Court addresses both elements and in that order.[7]

### 1.    Brannon Farms Fails to Adequately Plead a Deprivation of Its First Amendment Rights.

The First Amendment protects "the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. And "government retaliation for filing a petition violates the literal language of the Petition Clause." *Gable v. Lewis*, 201 F.3d 769, 772 (6th Cir. 2000). To succeed on a constitutional claim of interference with the right to petition based on retaliation, a plaintiff must prove: "(1) [it] engaged in protected conduct; (2) the defendants took an adverse action

---

[7] Brannon Farms also sues Carleta in her official capacity. (Doc. 1, #1). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citations omitted). Accordingly, a "suit against an individual in his official capacity is the equivalent of a suit against [that] governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citation omitted). A claim against Carleta in her official capacity, then, is the equivalent of suing Jackson Township. A viable § 1983 claim against a governmental entity must allege (1) a constitutional violation, which (2) was directly caused by a municipal policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017) (citation omitted). There are four paths to proving a policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

Brannon Farms has not attempted to allege any of these four avenues. It does not discuss any potential policy, allege that Carleta had final decision-making authority, discuss training or supervision, nor assert a custom of tolerance. So the Court dismisses the official capacity version of the claim, too.

against [it]; and (3) a causal connection exists between the two." *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 513 (6th Cir. 2020) (citing *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019)). Here, Brannon Farms fails to adequately plead the second element of its retaliation claim.

### a. Brannon Farms Engaged in Protected Conduct.

All agree that Brannon Farms' underlying conduct here falls within the First Amendment's ambit. Brannon Farms submitted a petition to the Jackson Township Trustees to vacate the end of Kelly Lane, which eventually was forwarded to the Highland County Commission, both of which are local governing bodies. (Doc. 1, #8, 10). "The plain language of the First Amendment makes clear that a 'petition' triggers the amendment's protections." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 789 (6th Cir. 2007) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 2007)). So Brannon Farms adequately pleaded the first element.

### b. Brannon Farms Did Not Allege Sufficient Facts to Establish an Adverse Action, at Least as to Any Conduct Other Than the Weyrichs' Lawsuit.

Brannon Farms stumbles on the second element, though. To establish an adverse action, a plaintiff must plead that the defendant took an action that is "*capable* of deterring a person of ordinary firmness from exercising the constitutional right in question." *Rudd*, 977 F.3d at 514 (quotation marks and citation omitted) (emphasis original). True, the defendant's conduct need not *actually* deter the plaintiff, but not just any arguably adverse action will do. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). So the question becomes how severe the action must be

10

to qualify as adverse under this standard. As a general matter, the effect "need not be great." *Rudd*, 977 F.3d at 514. Moreover, where, as here, the plaintiff is a private party, as opposed to a public employee or prisoner, there is a lower threshold of injury. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). In other words, "[t]he plaintiff's evidentiary burden is merely to establish the factual basis for [its] claim that the retaliatory acts amounted to more than a de minimis injury." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citation omitted). And this inquiry is highly context dependent. *Thaddeus-X*, 175 F.3d at 388.

But, while the Sixth Circuit's *description* of what counts as a qualifying injury ("more than de minimis") suggests a low hurdle, the few cases to actually address that question in the private-individual plaintiff context seem to adopt a somewhat higher standard. The exact contours of that higher standard, though, are not altogether clear. Part of the problem is the paucity of caselaw on the precise issue; most First Amendment retaliation caselaw involves alleged retaliation against prisoners or public employees. *See Fritz*, 592 F.3d at 724 ("There are very few cases in this Circuit addressing First Amendment retaliation against private individuals."). But while there admittedly are not many decided cases, the available precedent nonetheless offers some helpful guiding principles.

First, if a defendant directly exercises governmental power against the plaintiff, that generally suffices to establish an adverse action. *See id.* at 728. In *Fritz*, for example, the plaintiff, a private individual, wanted to have a home office and post a sign advertising her insurance services there, which required various zoning and

11

signage variances. *Id.* at 720. In pursuit of these variances, she commented at public town meetings and later criticized the defendants, the township, and specifically the Township Supervisor, in publicized letters to the press. *Id.* at 721. In response, several officials exercised their governmental power by directly denying her zoning and signage variations, and the court held those were plausible adverse actions in retaliation for her speech because they constituted a threat to her economic livelihood. *Id.* at 728. This is the most straightforward form of retaliation; the public official makes a decision in their formal role that directly, and negatively, impacts the speaking individual. *But see Davidian v. O'Mara*, 210 F.3d 371, 2000 WL 377342, at *4 (6th Cir. 2000) (Table) (holding there was no adverse action when officials blocked reporter's access to public records in response to unfavorable articles because it was not the "type of threatening or intimidating behavior" that would deter a person of ordinary firmness).

But when a public official uses the power or influence of their position less directly, as Brannon Farms alleges happened here, things get murkier. That is particularly true where, as here, the claim is based partially on a public official's alleged statements. True, a public official's improper comments in and of themselves can establish an adverse action. But not all such comments work. After all, "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bloch v. Ribar*, 156 F.3d 673, 679 (6th Cir. 1998) (bracket omitted) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

12

To that end, the plaintiff must establish that the comments impose a sufficient injury. *See Fritz*, 592 F.3d at 727.

Once again taking *Fritz* as an example, public officials allegedly retaliated against Fritz for comments she made at a public meeting and in related letters to the press. *Id.* at 723. Specifically, one the defendants allegedly called Fritz's employer several times, hoping to enlist the employer's help in "pressur[ing] Ms. Fritz to discontinue attending Comstock meetings and express[ing] opinions on Comstock issues publicly and privately and [to] discontinue petitioning Comstock for a redress of grievances, as well as pressure [her employer] to move out of Comstock or terminate its relationship with Ms. Fritz or both." *Id.* at 725. Beyond those calls, the plaintiff further alleged that the defendant made multiple, specific defamatory statements to her employer. *Id.* Three weeks after the last of these calls, Fritz's employer fired her. *Id.* at 721. According to the court, the defamatory comments themselves did not constitute an adverse action there. *Id.* at 727. Rather, it was only because the conversations also "attempted to threaten her business relationship" with her employer that they cleared the bar, particularly because her employer terminated her shortly thereafter. *Id.* at 728. Termination, and the threat thereof, sufficed as an adverse action because it would deter a person of ordinary firmness from engaging in similar conduct. *Id.*

That is not to say, though, that the contents of an official's statements can *never* be enough to show an adverse action. In *Bloch*, for example, the Sixth Circuit held that the plaintiffs adequately pleaded that a sheriff defendant took an adverse

13

action when he "reveal[ed] irrelevant, humiliating, and confidential information" about the plaintiff's rape in response to the plaintiff's public criticism of his investigation. 156 F.3d at 681. The court found that "embarrassment, humiliation, and emotional distress," when sufficiently severe, can rise to the level of an adverse action. *Id.* at 679–80. The question is whether the statements themselves would "chill people of ordinary firmness from continuing to engage in their constitutionally protected activity." *Id.* at 681.

Sixth Circuit precedent also offers examples of statements that fall short. In *Mattox v. City of Forest Park*, for example, the city police department released a 690-page report of its investigation into the local fire department. 183 F.3d 515, 518. The plaintiffs, a public official and an individual firefighter, claimed that the report contained irrelevant personal information and sought to damage their reputations as retaliation for the plaintiffs' prior criticisms of the fire department. *Id.* at 520. While a "close question," the Sixth Circuit concluded that the private individual's allegations could not survive summary judgment because "the revelations at issue in this case do not rise to the level of those in *Bloch*." *Id.* at 523. Accordingly, the plaintiff needed to specify how the report injured her—to "concretize her personal injury." *Id.*; s*ee also Mezibov v. Allen*, 411 F.3d 712, 715, 722–23 (6th Cir. 2005) (holding that there was no adverse action when a district attorney made comments about a defense attorney's experience and ethics allegedly in response to the defense attorney's motions to dismiss and to disqualify the district attorney).

14

Putting that all together, a plaintiff must allege an adverse action, whether through direct exercise of government power or otherwise. Absent such an action, the claim fails. For direct exercise claims, the analysis is straightforward. But for claims that are *not* based on a direct exercise of government power, when the alleged adverse actions consist of a public official's comments, the analysis turns on how the nature of those comments. Where they are sufficiently egregious (e.g., disclosing personal details of a rape investigation), the court will presume that the resulting harm suffices to deter a person of ordinary firmness from engaging in protected conduct. But for less embarrassing or inherently harmful statements, the court does not afford that same presumption. Rather, the plaintiff must allege the specific harm that they contend they suffered from the statement, so the court can assess whether that harm plausibly rises to the requisite level to constitute an adverse action.

So how does that play out here? The Court agrees with Carleta that Brannon Farms has failed to allege that she took a qualifying adverse action. To be clear, that is not to say that the Court agrees with *all* of Carleta's assertions on that front. For example, she argues that there was no adverse action because Brannon Farms was not in fact deterred from pursuing its petition. (Doc. 14, #77). But, as noted above, actual deterrence is not required; just action that is "capable of deterring a person of ordinary firmness." *Harbin-Bey*, 420 F.3d at 579; *Rudd*, 977 F.3d at 514. That Brannon Farms proceeded with its petition is thus not dispositive.

But Brannon Farms' allegations of retaliation still fail for several reasons—some related to timing and others related to the nature of the alleged statements.

15

Broadly speaking, the allegations fall into two groups: (1) those that refer to conduct that allegedly occurred before Brannon Farms filed its petition on September 30, 2022, and (2) those that occurred afterwards. Conduct in the former category, almost by definition, cannot constitute a retaliatory action. Retaliation, after all, is something that occurs *in response to* an event. So, as relevant here, it is not reasonable to conclude that Carleta retaliated against Brannon Farms for filing the petition to vacate through conduct that occurred *before* the petition was ever filed. True, one could conceive of an exception to this rule—Carleta may have *threatened* retaliation if Brannon Farms moved forward with a petition (e.g., something along the lines of "if you file that petition, I will use my office to harm you"); such a threat may well be actionable. But Brannon Farms alleges nothing of that sort here. Instead, it merely alleges that Carleta made various improper comments to various officials regarding its logging operation and improvements to Kelly Lane. (Doc. 1, #7). And the Complaint suggests that those comments occurred sometime between when Brannon Farms started its timber operation in July 2021 and a meeting held on August 27, 2021. (*Id.* at #6–7). Assuming these comments fall into that timeline or thereabouts, that would mean these comments occurred over a year before Brannon Farms submitted its petition. Regardless of the *propriety* of such comments, they cannot have been made in *retaliation* for Brannon Farms submitting the petition.[8]

---

[8] To the extent that Brannon Farms claims Carleta misused her office with respect to Brannon Farms' logging operation, (Doc. 1, #2), this is not properly a First Amendment claim. Brannon Farms does not allege it engaged in any protected conduct related to the logging operation, such as filing another petition or requesting zoning variances. Brannon Farms at most alleges that "Brannon's contracted logger, Gladfelter, began working with the Jackson

Similarly, any of the claims regarding Carleta misusing her position to learn confidential information or undertaking other efforts to interfere with these improvements, specifically, would also have taken place before Brannon Farms filed its petition. (*Id*.). So those efforts could not constitute retaliation either.

Now turn to the allegations about actions Carleta allegedly undertook *after* the filing occurred. Those claims further break down into two categories: those related to the Jackson Township Trustees' vote, and those related to the Highland County Commission's vote. As to the former, Carleta argues that the Jackson Township Trustees approved the petition, so Brannon Farms was not harmed. (Doc. 14, #77). The Court agrees; Brannon Farms was not adversely impacted by the Jackson Township Trustees' vote considering they voted to grant the petition. (Doc. 1, #10). And Brannon Farms fails to even generally describe comments by Carleta that could plausibly meet the high bar for a comments-only claim as set forth above. Again, the Court takes no position on whether Carleta did or did not make improper comments to the Trustees. Rather, the point is simply that Brannon Farms cannot claim it suffered any "concrete injury" when the Trustees voted in its favor, and it fails to allege enough about the content of any such statements to proceed purely on egregiousness grounds. *See Mattox*, 183 F.3d at 523.

Carleta's actions surrounding the Highland County Commission's vote, however, present a closer call. The Commissioners voted to "take no action" on the

---

Township trustees to improve the culverts and gravel roadway." (*Id*. at #7). But this is not sufficient to allege protected conduct.

petition. (Doc. 1, #11). In doing so, they effectively denied the petition, at least in the short-term, so this plausibly could constitute a concrete injury.

But, for two reasons, this still fails to support a retaliation claim. First, the "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Rudd*, 977 F.3d at 516 (quoting *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)). Brannon Farms then cannot claim that the nonaction, in and of itself, injured it because it was not entitled to a favorable vote. True, if improper comments *caused* that nonaction, things may be different. But the inaction itself does not suffice.

And that leads to the second and related problem. Brannon Farms' allegations about Carleta's role in *causing* the nonaction vote are wholly conclusory, which does not clear the bar needed to survive a motion for judgment on the pleadings. *Terry*, 604 F.3d at 276. On this point, Brannon Farms simply alleges that (1) Carleta wrongfully contacted the Highland County Prosecuting Attorney, the Highland County Commissioners, and other officials to defeat the petition, and (2) Carleta filed the "frivolous" state lawsuit to interfere with the petition. (Doc. 1, #9; Doc. 15, #93 (citing Doc. 1, #12)). True, as to the first, Brannon Farms says that, after the Trustees approved the petition and it moved to the Highland County Commissioners, the Commissioners tabled the petition "as a direct consequence of Defendant's efforts to influence the result of the vote." (Doc. 1, #11). But Brannon Farms does not provide any detail on how Carleta allegedly influenced their vote.

18

To be fair, at other points, the Complaint alleges that "[Carleta] wrongfully contacted the Highland County Prosecutor's office using her position." (*Id.* at #10, 12). And in its Response to the instant motion, Brannon Farms points to several other paragraphs to bolster its claim, particularly that "Defendant Carleta Weyrich used her position as the Jackson Township fiscal officer to accomplish what an ordinary citizen could not." (Doc. 15, #93 (quoting Doc. 1, #12)). Similarly, the Complaint asserts that Carleta used her position to "learn otherwise confidential information that is not generally available to the public." (Doc. 1, #6). But once again, these are all conclusory allegations. *How* did she use her position? What did she learn? Basically, what did she actually do? The Complaint provides no insight on these topics. And such vague and conclusory allegations simply do not suffice to meet the heightened pleading standard that *Iqbal*/*Twombly* adopted. *Terry*, 604 F.3d at 276.

For example, unlike the plaintiff in *Fritz*, Brannon Farms has not provided any information about the substance of these communications or even approximately when they occurred. 592 F.3d at 723. Nor does Brannon Farms allege anything about Carleta's statements that would suggest they rise to the level of the "irrelevant, humiliating, and confidential information" at issue in *Bloch*. 156 F.3d at 681. Perhaps Carleta did make "humiliating" comments or took other concrete steps to influence the Highland County vote. But as currently pled, Brannon Farms offers only conclusions on that front, without any factual allegations to back them up. So it failed to establish an adverse action based on that alleged conduct.

That leaves the lawsuit. The Weyrichs filed a state lawsuit against Brannon Farms on December 2, 2022.[9] (Doc. 1, #8). Brannon Farms alleges that it "was under the guise of some sort of property line dispute, request for an easement and/or request to relocate Kelly Lane." (*Id.* at #9). The state court ultimately granted summary judgment in favor of Brannon Farms on all of the Weyrichs' claims, and later ordered that Brannon Farms' title be quieted in its favor. (*Id.* at #9–10). Because the Weyrichs did not have any valid reasons to make these claims, it argues, the lawsuit was frivolous and only a way to create controversy around the petition. (*Id.* at #9, 11–12). Moreover, Brannon Farms incurred "damages, attorney fees and costs." (*Id.* at #10).

A lawsuit filed by a government official potentially could serve as an adverse action. But the Court need not decide that question now because, as explained below, Plaintiff cannot establish that Carleta was acting under color of law when she filed and pursued that lawsuit.

### 2. Brannon Farms Did Not Adequately Plead that Carleta Acted Under Color of Law.

In addition to plausibly alleging that the defendant deprived the plaintiff of a right secured by federal law, to advance a § 1983 claim, a plaintiff must also plausibly allege that the defendant acted under color of state law in doing so. *Adickes*, 398 U.S. at 150. "Private individuals may be considered state actors if they exercise power 'possessed by virtue of state law' and if they are 'clothed with the authority of state law.'" *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) (quoting *United*

---

[9] As noted above, *see* supra note 6, the Complaint states the lawsuit was filed on December 2, 2023, (Doc. 1, #8), but public records indicate it was filed in 2022.

*States v. Classic*, 313 U.S. 299, 326 (1941)). "But not every action by a public official is done under color of state law." *Viola v. Yost*, No. 22-3262, 2023 WL 6222366, at *2 (6th Cir. June 12, 2023). When evaluating a police officer's actions, for example, it is "not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (quoting *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975)). Rather, it is the "nature of the act performed" that determines whether the public official acted under color of law. *Meadows v. Enyeart*, 627 F. App'x 496, 501 (6th Cir. 2015) (citation omitted). Sometimes this question can be resolved as a matter of law, but it frequently involves factual inquiries that make it improper to decide at this stage. *See Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003); *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980).

As a reminder, there are two main sets of allegations at play: (1) that Carleta wrongfully communicated with the Jackson Township Trustees, Highland County Prosecutor's Office, and Highland County Commissioners, and (2) that Carleta improperly filed a state lawsuit. (Doc. 1, #12). The analysis is slightly different for each.

Starting with the allegedly wrongful communications, it is possible that Carleta acted under color of state law in making them. Carleta is Jackson Township's fiscal officer. (Doc. 1, #2). As fiscal officer, she is responsible for keeping records of the township trustees' meetings, including its accounts and transactions, and has access to the record of township roads and the record of township officers' oaths and bonds.

21

*See* Ohio Rev. Code §§ 507.01, .04, .05. It is possible that by virtue of her position, she had connections or relationships to the Jackson Township Trustees that she would not have had otherwise. And comments made in her official position could be "clothed with the authority of state law." *See Carl*, 63 F.3d at 595 (citation omitted).

Even though the Court can follow this logic, though, Brannon Farms does not allege any facts about the circumstances of Carleta's communications with the various trustees and other public officials, as described above. *See* supra Law & Analysis, Part A.1.b. It does not allege when these communications occurred, whether Carleta used her official email or office phone number or other symbol of her public position, or what the substance of the contact was. Instead, Brannon Farms merely makes conclusory allegations that Carleta wrongfully contacted the various officials. (*See, e.g.*, Doc. 1, #10 ("[Carleta] wrongfully contacted the Highland County Prosecutor's office using her position as the Jackson Township fiscal officer in an attempt to frustrate, influence and/or inhibit [the] Brannon application.")). This is not enough to plausibly allege that Carleta's actions were "clothed with the authority of state law." *Carl*, 763 F.3d at 595 (citation omitted). Considering the allegations surrounding these communications were also too vague and conclusory to establish an adverse action, these allegations fail to plausibly allege a § 1983 claim on both elements.

As to the state court lawsuit, under the allegations here, the only plausible conclusion is that Carleta was acting solely as a private property owner when she sued Brannon Farms. Indeed, "state officials have private lives and their own

22

constitutional rights." *Lindke v. Freed*, 601 U.S. 187, 197 (2024). Imposing liability on Carleta under § 1983 for seeking to vindicate her own rights as a property owner may well violate Carleta's own constitutional rights. After all, the state-action requirement for a § 1983 suit is designed, at least in part, to "protect[] a robust sphere of individual liberty for those who serve as public officials." *Id.* at 196. Carleta appears by all measures to have filed the state lawsuit with her husband Philip to contest the location of Kelly Lane, amongst other property issues. And no one can dispute that this issue—Kelly Lane's correct location—had an impact on Carleta in her private capacity as a property owner. So the nature of the act was "functionally equivalent to that of any private citizen." *Meadows*, 627 F. App'x at 501 (citation omitted). Brannon Farms argues that the Weyrichs should have known their claims would fail. That may well be, but so what? Merely because a county official files a lawsuit—even a frivolous lawsuit—to protect their private interests as a property owner does not make that lawsuit an exercise of state power or conduct that occurs under color of state law. Without more information about the state court suit, the Court is hard pressed to see how this element is satisfied.

In sum, Brannon Farms fails to adequately state a § 1983 claim for retaliation for exercising its First Amendment right to petition the government. While the petition is clearly protected conduct, Brannon Farms presents only conclusory allegations to establish an adverse action. Additionally, it fails to demonstrate how Carleta acted under color of state law as to at least some of her conduct. Thus, the Court dismisses this claim.

**B.** **The Court Declines to Exercise Supplemental Jurisdiction over the Remaining State Law Claims, At Least For Now.**

Brannon Farms also raises three state law claims for relief: (1) malicious interference with the right to petition government, (2) abuse of process/malicious civil prosecution, and (3) a claim under Ohio Revised Code § 2307.60. (Doc. 1, #12–14). Because the Court dismisses the sole federal claim, it declines to exercise supplemental jurisdiction over the remaining state law claims.

A federal court may exercise supplemental jurisdiction over state law claims that constitute the same case or controversy as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). But a court may decline supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). A district court's decision whether to exercise supplemental jurisdiction over state-law claims in the absence of any remaining federal-law claims is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. 1367(c)). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Id.* at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)).

Here, the Court dismisses the only federal claim, and the values of judicial economy, convenience, and fairness do not outweigh the interest in allowing state courts to decide these issues of state law. Indeed, considerations of federalism and comity counsel strongly in favor of dismissing the state-law claims. As the Supreme Court has explained, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Moreover, this case is still in its infancy. This opinion addresses a motion for judgment on the pleadings, and there have been no other substantive motions in this case. Judicial economy, then, strongly favors declining to exercise supplemental jurisdiction. To be sure, Brannon Farms faces some inconvenience in refiling a case in state court. But the parties have pursued claims in state court before, and they can do so again.

But there is one caveat—the Court is dismissing the federal claim without prejudice. It is possible that Brannon Farms could successfully amend its Complaint to address the concerns that the Court raises above. In that event, the federal claim would proceed, in turn resurrecting supplemental jurisdiction for the state-law claims under § 1367. So rather than dispose of the state-law claims on jurisdictional grounds now, the Court holds them in abeyance. Should Brannon Farms fail to move for leave to amend in the time the Court provides, the Court will dismiss the state law claims without prejudice.

## C. Brannon Farms' Claim for Punitive Damages is a Remedy, not a Claim for Relief.

Lastly, Brannon Farms asserts what it characterizes as a "claim" for punitive damages. The problem is that neither federal nor Ohio law recognizes a separate cause of action for punitive damages; rather, it is merely a form of relief that can attach to other substantive claims when certain conditions are met. *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994); *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 16 (D.D.C. 2011) ("It is a well-established principle that punitive damages is not an independent cause of action." (internal quotation marks omitted)). For that reason, a standalone punitive damages count does not state a claim for relief. *Jestice v. Butler Tech. & Career Dev. Schs. Bd. of Educ.*, No. 1:11-cv-101, 2012 WL 71021, at *4 (S.D. Ohio Jan. 10, 2012). So the Court will dismiss this count.

To be clear, though, in dismissing the standalone claim for punitive damages, the Court is not holding that, as a matter of law, punitive damages are not available here. And Brannon Farms still includes a request for punitive damages in its prayer for relief. (*See* Doc. 1, #15). The point is simply that it is not an independent cause of action.

## D. The Court Declines to Address Carleta's Qualified Immunity Argument.

Finally, a word about qualified immunity. Carleta argues that she is entitled to qualified immunity for both the federal and state law claims. (Doc. 14, #85–87). The Sixth Circuit has held that qualified immunity disputes are "more appropriately dealt with at the summary-judgment stage or at trial," instead of the motion-to-

26

dismiss stage. *Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017). That is because qualified immunity, which often turns on the specific facts of each case, is difficult to adjudicate before discovery. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton J., concurring). That is particularly true here, where the Court finds that Brannon Farms did not plead sufficient facts to make out the § 1983 claim. Given the dearth of facts, even in the form of factual allegations, the Court is simply in no position to decide whether any defendant violated a clearly established right. So the Court declines to address qualified immunity at this juncture.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Carleta's Motion for Judgment on the Pleadings (Doc. 14). Specifically, the Court **DISMISSES WITHOUT PREJUDICE** Count 1 of the Complaint**.** For now, the Court holds the state-law claims (Counts 2, 3, and 4) in abeyance. However, the Court **DISMISSES WITH PREJUDICE** Count 5, for the reasons explained above. Because Brannon Farms potentially could cure the other deficiencies, though, the Court **GRANTS** Brannon Farms 30 days to file a motion for leave to amend Count 1 of the Complaint. And because the Court effectively dismisses the Complaint, it **DENIES AS MOOT** Plaintiff's Motion to Transfer Records from Highland County (Doc. 21) and Plaintiff's Motion for Leave to File Plaintiff's Motion for In Camera Review of Documents Under Seal (Doc. 22).

**SO ORDERED.**

January 22, 2026
**DATE**

DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE